STATE of Wisconsin,
Plaintiff-Respondent,†

v.

Audrey A. EDMUNDS,
Defendant-Appellant.

Court of Appeals

*No. 2007AP933. Submitted on briefs December 7, 2007.
—Decided January 31, 2008.*

2008 WI App 33

(Also reported in 746 N.W.2d 590.)

† Petition to review denied 4/14/08.

374

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Keith A. Findley, Byron C. Lichstein, John A. Pray* of *Wisconsin Innocence Project, Frank J. Remington Center, University of Wisconsin Law School.*

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Daniel J. O'Brien*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Higginbotham, P.J, Dykman and Bridge, JJ.

¶ 1. DYKMAN, J. Audrey Edmunds appeals from an order denying her motion for a new trial.[1] Edmunds contends that the circuit court applied an erroneous legal standard for whether a new trial is warranted because of newly discovered evidence. Alternatively, Edmunds argues she is entitled to a new trial in the interest of justice because the real controversy was not fully tried. We conclude that the record demonstrates

---

[1] We wish to acknowledge the following law students who as participants in the Wisconsin Innocence Project made a significant contribution to the appellant's appeal: Steven D. Grunder, Laura L. Bayard, and Anwar Edward Ragep.

that Edmunds is entitled to a new trial on the basis of newly discovered evidence[2] and therefore reverse.

## Background

¶ 2.   Audrey Edmunds was charged with first-degree reckless homicide following the death of seven month old Natalie on October 16, 1995, while Edmunds was caring for Natalie at Edmunds's home. At trial, the State presented numerous medical expert witnesses who testified to a reasonable degree of medical certainty that the cause of Natalie's death was violent shaking or violent shaking combined with impact that caused a fatal head injury. The State's witnesses also testified that after being injured, Natalie would have had an immediate and obvious response and would not have appeared normal. Natalie's mother, and the father of another child in Edmunds's care who observed Natalie, testified that Natalie was acting normally when she was dropped off at Edmunds's home on the morning of her death.

¶ 3.   Edmunds presented one medical expert witness who agreed with the State's witnesses that Natalie was violently shaken before her death but who opined that the injury occurred before Natalie was brought to Edmunds's home. The defense witness testified that Natalie had a lucid interval following the shaking and then suffered a seizure at Edmunds's home that resulted in her death. Edmunds testified that after Natalie was dropped off in the morning, Natalie was crying very hard and refused her bottle. After trying unsuc-

---

[2] Because we conclude that Edmunds is entitled to a new trial on the basis of newly discovered evidence, we need not address her argument that the real controversy was not fully tried.

cessfully to console Natalie, Edmunds left Natalie in a bedroom in her car seat with a propped bottle. After tending to her own children and the other children in her care, Edmunds observed that Natalie had stopped crying. Edmunds testified that she picked Natalie up and realized Natalie was limp and liquid was coming out of her nose and mouth. Edmunds called 911, and rescue personnel arrived and tried to resuscitate Natalie. Natalie was pronounced dead later that night at University Hospital.

¶ 4. The State presented another medical expert witness in rebuttal who disagreed with the defense expert and who stated that the medical evidence established that Natalie was violently shaken immediately before reacting and could not have had a lucid interval. In closing arguments, the defense tried to create reasonable doubt as to whether one of Natalie's parents had shaken her before leaving her with Edmunds, and the State reiterated that the medical testimony established that Natalie had been violently shaken immediately before requiring medical attention, which had to have been while in Edmunds's care. Edmunds was convicted of first-degree reckless homicide.

¶ 5. Edmunds filed a postconviction motion in 1997, arguing insufficiency of the evidence, multiple trial errors, sentencing errors, and that the real controversy was not tried because the issue should have been *whether* Natalie was shaken, not *who* had shaken Natalie. In her reply brief, Edmunds also claimed that she was entitled to a new trial on newly discovered evidence. In support, Edmunds submitted a proffer of expert medical testimony, including expert reports from two doctors. The first doctor was expected to testify that impact is necessary to cause fatal injuries in an infant, thus questioning whether "shaken baby syn-

drome" exists; that there was no evidence of an impact in Natalie's case; that, even assuming head trauma, there is a possibility of a significant lucid interval in infants after receiving a traumatic head injury; and that Natalie's acute brain injury may have been the result of a spontaneous re-bleeding of an older, minor injury, without a new trauma. The second doctor was expected to testify that Natalie was subject to intentional trauma that caused her death, but that there was no way within a reasonable degree of medical certainty to time the injury prior to her death and that a layperson would not be able to identify whether Natalie had undergone neurological damage. The circuit court denied Edmunds's motion, explaining that the defense strategy at trial (plan A) was that one of Natalie's parents, not Edmunds, shook Natalie at some point before her symptoms appeared. On her postconviction motion, the court said, Edmunds was attempting to assert another strategy (plan B), claiming that Natalie had not been shaken at all. The court said that there was no basis to find that Edmunds was not negligent in seeking the medical evidence before trial and that it was not probable that a different result would have been reached at trial if the new evidence had been offered. Edmunds appealed on other grounds, and we affirmed. *State v. Edmunds*, 229 Wis. 2d 67, 598 N.W.2d 290 (Ct. App. 1999).

¶ 6.  Edmunds filed this motion for a new trial in 2006, asserting that there were significant developments in the medical community around "shaken baby syndrome" in the ten years since her trial that amounted to newly discovered evidence. The circuit court held an evidentiary hearing, and Edmunds presented expert medical testimony from six doctors who explained that there is now a significant debate in the

medical community as to whether Natalie's symptoms were necessarily indicative of shaking or shaking combined with head trauma in infants. The experts explained that there was not a significant debate about this issue in the mid-1990s and that the opinions offered in Edmunds's first postconviction motion would have been considered minority or fringe medical opinions. The State presented four medical experts, who testified that the medical evidence available in 1996 was still valid, despite the emergence of a debate about shaking and traumatic head injuries in infants and small children. The State's experts disagreed with the defense experts and maintained that the evidence at trial established that Natalie had been violently injured while in Edmunds's care.

¶ 7.  The circuit court found that Edmunds had presented newly discovered evidence but denied her motion because it concluded that Edmunds had not established that there was a reasonable probability of a different result with the new evidence. The court explained that while both parties had presented credible evidence, the State's evidence was more convincing. Edmunds appeals.

*Standard of Review*

¶ 8.  We review a circuit court's determination as to whether a defendant has established his or her right to a new trial based on newly discovered evidence for an erroneous exercise of discretion.[3] *State v. McCallum,*

[3] Chief Justice Abrahamson's concurrence to *State v. McCallum,* 208 Wis. 2d 463, 484–87, 561 N.W.2d 707 (1997), explains that although the courts have often repeated that the newly discovered evidence test is reviewed for an erroneous exercise of discretion, that standard has not been consistently applied. However, under *Cook v. Cook,* 208 Wis. 2d 166, 189, 560

208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997). A court properly exercises its discretion if it relies on the relevant facts in the record and applies the proper legal standard to reach a reasonable decision. *LeMere v. LeMere*, 2003 WI 67, ¶ 13, 262 Wis. 2d 426, 663 N.W.2d 789. Thus, "[w]e will find an [erroneous exercise] of discretion if the circuit court's factual findings are unsupported by the evidence or if the court applied an erroneous view of the law." *State v. Martinez*, 150 Wis. 2d 62, 71, 440 N.W.2d 783 (1989).

## Discussion

¶ 9.   Edmunds contends that she is entitled to a new trial because the developments in medical research and literature in the ten years since her trial have provided new evidence that creates a reasonable probability that a different result would be reached in a new trial. *See State v. Armstrong*, 2005 WI 119, ¶¶ 157–62, 283 Wis. 2d 639, 700 N.W.2d 98. The State asserts that Edmunds's claims are procedurally barred because they are identical to the claims she raised in her 1997 postconviction motion and that, if not barred, the claims do not meet the test for newly discovered evidence entitling Edmunds to a new trial. We conclude that Edmunds's claims are not procedurally barred and that she has established she is entitled to a new trial based on newly discovered evidence.

## Claims not procedurally barred

¶ 10.   The State asserts that Edmunds's claims are procedurally barred under Wis. Stat. § 974.06(4)

N.W.2d 246 (1997), we are bound by the *McCallum* majority's mandate to review the circuit court's decision for an erroneous exercise of discretion.

(2005–06).[4] It asserts that the circuit court erred in reaching the merits of this case, because Edmunds's 1997 motion raised the issue of advances in medical science since her trial regarding shaken baby syndrome and lucid intervals. Further, the State asserts that Edmunds's failure to appeal from the newly discovered evidence portion of the circuit court's first postconviction motion decision makes the circuit court's ruling the law of the case. *See State v. Stuart*, 2003 WI 73, ¶ 23, 262 Wis. 2d 620, 664 N.W.2d 82. The State asserts that Edmunds's failure to appeal from that portion of the judgment on her direct appeal puts her in the same position as a defendant who voluntarily dismisses an appeal. *See State v. Lee*, 197 Wis. 2d 959, 968, 542 N.W.2d 143 (1996).

¶ 11.   The problem with the State's argument is that the evidence offered in Edmunds's current post-conviction motion is entirely different in character from the evidence offered in her 1997 postconviction motion. We recognize, as the State points out, that the arguments Edmunds raises here (that new expert medical testimony supports the theory that Natalie's injuries could have occurred without an intentional injury, and that Natalie could have had a substantial lucid interval following a head trauma, if one occurred) were raised in

---

[4] Wisconsin Stat. § 974.06(4) (2005–06) provides:

> All grounds for relief available to a person under this section must be raised in his or her original, supplemental or amended motion. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the person has taken to secure relief may not be the basis for a subsequent motion, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended motion.

her 1997 postconviction motion. However, that does not end our inquiry. Although the basic arguments are parallel, the form and nature of the evidence supporting the arguments are dramatically different.

¶ 12. In her 1997 motion, Edmunds argued that the medical testimony she offered was newly discovered because defense counsel had not located the experts, who were from out of state, to provide a minority opinion that challenged the majority opinion expressed by the State's witnesses at trial. The defense experts in the 1997 motion would have offered the existing theories in the medical community, disavowed by the mainstream, that shaking alone could not cause fatal injuries, that a previous brain injury can spontaneously re-bleed, and that an infant can experience a head trauma and have a significant lucid interval. In contrast, the defense experts who testified for the 2006 postconviction motion explained that in the past ten years, a shift has occurred in the medical community around shaken baby syndrome, so that now the fringe views posited in 1997 are recognized as legitimate and part of a significant debate. They explained that there has been significant development in research and literature that challenges the medical opinions presented at Edmunds's trial. Thus, the State's argument that this motion is the same as Edmunds's 1997 motion, or that Edmunds could have raised her current arguments in her appeal from the circuit court's 1997 decision, are unavailing. We turn, then, to the merits of Edmunds's appeal.

*Newly discovered evidence*

¶ 13. To obtain a new trial based on newly discovered evidence, a defendant must establish by clear and

convincing evidence that "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *Armstrong*, 283 Wis. 2d 639, ¶ 161 (citation omitted). Once those four criteria have been established, the court looks to "whether a reasonable probability exists that a different result would be reached in a trial." *Id.* (citation omitted). The reasonable probability factor need not be established by clear and convincing evidence, as it contains its own burden of proof. *Id.*, ¶¶ 160–62 (abrogating *State v. Avery*, 213 Wis. 2d 228, 234–37, 570 N.W.2d 573 (Ct. App. 1997)).

¶ 14.   The circuit court found that Edmunds had established the first four criteria by clear and convincing evidence. As explained above, we review a circuit court's decision on a motion for a new trial based on newly discovered evidence for an erroneous exercise of discretion. *See McCallum*, 208 Wis. 2d at 473. Thus, we review whether the circuit court properly exercised its discretion in finding that the first four factors had been met by clear and convincing evidence.

■

¶ 15.   We agree with the circuit court that Edmunds established the first four factors of the newly discovered evidence test by clear and convincing evidence. Edmunds presented evidence that was not discovered until after her conviction, in the form of expert medical testimony, that a significant and legitimate debate in the medical community has developed in the past ten years over whether infants can be fatally injured through shaking alone, whether an infant may suffer head trauma and yet experience a significant lucid interval prior to death, and whether other causes may mimic the symptoms traditionally viewed as indi-

cating shaken baby or shaken impact syndrome. Edmunds could not have been negligent in seeking this evidence, as the record demonstrates that the bulk of the medical research and literature supporting the defense position, and the emergence of the defense theory as a legitimate position in the medical community, only emerged in the ten years following her trial. The evidence is material to an issue in the case because the main issue at trial was the cause of Natalie's injuries, and the new medical testimony presents an alternate theory for the source of those injuries. This evidence is not merely cumulative, in that it differs from the substance and quality of the defense evidence at trial. We find no erroneous exercise of discretion in the circuit court's findings as to these factors, as they are supported by the medical expert testimony at the postconviction hearing motion as contrasted with the medical expert testimony at trial.[5]

¶ 16. The real crux of the dispute in this case is whether the new expert medical testimony Edmunds offers establishes a reasonable probability that a different result would be reached in a new trial. The circuit court found that there was not a reasonable probability of a different result following a new trial after weighing Edmunds's new evidence against the State's rebuttal evidence. The court said that although Edmunds had presented credible testimony from medical experts challenging the medical opinions presented at trial, the State's countering evidence was more convincing. Thus,

---

[5] The State argues this issue as if our review is de novo, relying on the same reasons it gave for its argument that Edmunds's current motion is procedurally barred. For the same reasons that we concluded that Edmunds's motion is not procedurally barred, we do not agree with the State that Edmunds has presented nothing new.

the court explained, the State's case was as strong or stronger than it had been at the time of trial, so that there was not a reasonable probability a new result would be reached with a new trial. Again, we review this finding for an erroneous exercise of discretion. *See McCallum*, 208 Wis. 2d at 473.

¶ 17. In *McCallum*, the supreme court reviewed the role of a circuit court in analyzing newly discovered evidence.[6] McCallum was prosecuted for second-degree sexual assault of a minor based on the minor's uncorroborated testimony. *McCallum*, 208 Wis. 2d at 468. After McCallum was convicted, the minor recanted her accusation. *Id.* The supreme court concluded that the circuit court erred in denying McCallum's motion to withdraw his Alford plea based on its determination that the recantation was less credible than the original accusation. *Id.* at 468, 474–75. The court explained that the circuit court applied an erroneous legal standard by weighing the credible evidence because "[t]he correct legal standard when applying the 'reasonable probability of a different outcome' criteria is whether there is a reasonable probability that a jury, looking at both the accusation and the recantation, would have a reasonable doubt as to the defendant's guilt." *Id.* at 474. Thus, the circuit court erred in finding there was not a reasonable probability that a different result would be reached at a new trial based on its finding that the

---

[6] *McCallum* involved a motion to withdraw an Alford plea after the accusing victim recanted. However, the court explained that the reasonable probability standard it articulated "is equally applicable to motions to withdraw an Alford plea, motions to withdraw a guilty plea, and motions for a new trial." *McCallum*, 208 Wis. 2d at 474. Thus, *McCallum* is persuasive here and in our discussion of the meaning of a reasonable probability under the newly discovered evidence test, below.

victim's recantation was less credible than her accusation, as "[o]ne does not necessarily follow from the other." *Id.* That is, "[a] reasonable jury finding the recantation less credible than the original accusation could, nonetheless, have a reasonable doubt as to a defendant's guilt or innocence." *Id.* at 474–75. On the other hand, the court explained, "[a] finding that the recantation is incredible necessarily leads to the conclusion that the recantation would not lead to a reasonable doubt in the minds of the jury." *Id.* at 475. When faced with competing credible evidence, "[t]he question . . . is not whether the jury could accept the recantation as true, or even whether the jury could believe it. A jury does not necessarily have to accept a recantation as true, nor believe it, in order to have a reasonable doubt." *Id.* at 475 & n.2. If "there is a reasonable probability that a jury, looking at both the accusation and the recantation, would have a reasonable doubt as to the defendant's guilt[,] . . . [then] the circuit court must grant a new trial." *Id.* at 475.

¶ 18.    Here, the circuit court expressly found that Edmunds's new evidence and the State's new evidence were both credible. The court then weighed the evidence and concluded that the State's evidence was stronger. Under *McCallum*, the court applied the wrong legal standard. After determining that both parties presented credible evidence, it was not the court's role to weigh the evidence. Instead, once the circuit court found that Edmunds's newly discovered medical evidence was credible, it was required to determine whether there was a reasonable probability that a jury, hearing all the medical evidence, would have a reasonable doubt as to Edmunds's guilt. This question is not answered by a determination that the State's evidence

388

was stronger. As explained in *McCallum*, a jury could have a reasonable doubt as to a defendant's guilt even if the State's evidence is stronger.

¶ 19. Having determined that the circuit court applied the wrong legal standard, we must determine whether to apply the proper legal standard ourselves or remand for the circuit court to do so. In *McCallum*, the court stated that although it could apply the correct legal standard itself, the wiser course was to remand for the circuit court to make credibility determinations that would aid its analysis. *Id.* at 479–80. Here, the circuit court has made its credibility determinations. Thus, we are in as good a position to determine whether the newly discovered evidence, together with the old evidence, establishes a reasonable probability that a jury would have a reasonable doubt as to Edmunds's guilt.

¶ 20. Edmunds argues that she has met the reasonable probability of a different outcome criteria by showing that confidence in the outcome of her trial has been undermined. The State responds that the reasonable probability test for whether a defendant is entitled to a new trial based on newly discovered evidence requires an outcome determinative showing by its plain language. Thus, the State contends, the test for a reasonable probability of a new result at trial requires more than a showing that confidence in the outcome of the trial is undermined. We conclude that although there is no clear precedent as to which standard we are to apply, the record establishes that Edmunds is entitled to a new trial.

¶ 21. In *Avery*, 213 Wis. 2d at 237–41 & n.1, we held that the newly discovered evidence test requires more than a showing that confidence in the outcome of a trial is undermined. We held that the reasonable

389

probability test is based on an outcome-determinative standard. *Id.* We relied in part on the fact that the concurrence in *McCallum* had asserted that the various tests applied for the reasonable probability test in newly discovered evidence cases should be uniformly treated as requiring a defendant to establish that confidence in the outcome is undermined, and the majority declined to adopt this position. *Avery,* 213 Wis. 2d at 241 n.1. However, when the supreme court recently addressed the issue of the meaning of a reasonable probability of a different outcome based on newly discovered evidence in *State v. Love,* 2005 WI 116, ¶¶ 52–54, 284 Wis. 2d 111, 700 N.W.2d 62, it expressly declined to resolve the dispute over whether the test requires that a defendant establish that confidence in the outcome of the trial is undermined or requires the defendant to make an outcome determinative showing. Instead, the court held that "Love's postconviction motion meets the higher outcome determinative test." *Id.,* ¶ 54.

¶ 22. Thus, the supreme court has left open the question of what a reasonable probability means in the newly discovered evidence context. We do not agree with the parties that either of the purported standards —undermining confidence in the outcome or an outcome determinative showing—is clearly supported by case law. Indeed, if either standard were clearly correct, the supreme court would not have deferred the question for another day. Rather, our only clear guidance comes from how the court described a reasonable probability in *McCallum,* 208 Wis. 2d at 474: "The correct legal standard when applying the 'reasonable probability of a different outcome' criteria is whether there is a reasonable probability that a jury, looking at both [the

390

old and the new evidence], would have a reasonable doubt as to the defendant's guilt." Under this test, the dispute as to whether a defendant needs to show that confidence in the outcome of the trial is undermined or make an outcome determinative showing becomes a very fine distinction. That is, we find it difficult to conceive of a scenario in which our confidence in the outcome of a trial would be undermined by newly discovered evidence (which *Love* categorizes as the lower standard), and where we could not say that the defendant had made an outcome determinative showing as to a reasonable probability of a different result at a new trial (which *Love* categorizes as the higher standard). Stated otherwise, it seems that our confidence in the outcome of a trial will only be undermined if the new evidence, together with the old evidence, would probably create a reasonable doubt for a jury. Conceding that there may be the rare case where our confidence in the outcome of a trial is undermined, and yet there is only a fifty-fifty or lower chance that the evidence would probably create reasonable doubt in a jury, we conclude that this is not that case.

¶ 23.   The newly discovered evidence in this case shows that there has been a shift in mainstream medical opinion since the time of Edmunds's trial as to the causes of the types of trauma Natalie exhibited. We recognize, as did the circuit court, that there are now competing medical opinions as to how Natalie's injuries arose and that the new evidence does not completely dispel the old evidence. Indeed, the debate between the defense and State experts reveals a fierce disagreement between forensic pathologists, who now question whether the symptoms Natalie displayed indicate intentional head trauma, and pediatricians, who largely

adhere to the science as presented at Edmunds's trial. However, it is the emergence of a legitimate and significant dispute within the medical community as to the cause of those injuries that constitutes newly discovered evidence. At trial, and on Edmunds's first postconviction motion, there was no such fierce debate. Thus, the State was able to easily overcome Edmunds's argument that she did not cause Natalie's injuries by pointing out that the jury would have to disbelieve the medical experts in order to have a reasonable doubt as to Edmunds's guilt. Now, a jury would be faced with competing credible medical opinions in determining whether there is a reasonable doubt as to Edmunds's guilt. Thus, we conclude that the record establishes that there is a reasonable probability that a jury, looking at both the new medical testimony and the old medical testimony, would have a reasonable doubt as to Edmunds's guilt. Accordingly, we reverse and remand for a new trial.

*By the Court.*—Order reversed and cause remanded with directions.