COURT OF APPEALS
DECISION
DATED AND FILED

July 13, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP341**

STATE OF WISCONSIN

Cir. Ct. No. 2012CF547

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

ANTHONY R. PICO,

   DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Waukesha County: PAUL BUGENHAGEN, JR., Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Kornblum, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Anthony R. Pico appeals an order denying his WIS. STAT. § 974.06 (2019-20) motion for a new trial.[1]  Pico alleges the circuit court erred when it denied his newly-discovered-evidence and ineffective-assistance-of-counsel claims without a hearing.  Alternatively, Pico argues he is entitled to a new trial in the interest of justice.  We affirm.

## BACKGROUND

¶2    Pico was charged with one count of first-degree sexual assault of a child for twice putting his hand down eight-year-old D.T.'s pants and touching her vagina.  Pico pled not guilty and went to trial.  At the trial, the State played a video of a forensic interview with D.T.  In the interview, D.T. claimed she had been reading to Pico, who was a parent volunteer in her second grade classroom, when Pico started rubbing her left leg.  According to D.T., Pico twice slid his hand down the waistband of her pants, under her underwear, and rubbed his fingers where she "goes to the potty."

¶3    D.T. also testified at the trial.  On cross-examination, D.T. told the jury that Pico twice touched her under her clothing near her waistband, but did not rub anything when his hand was inside her pants.  On redirect examination, D.T. testified that she told the truth in the video when she said that Pico touched her twice under her underwear where she goes potty.  D.T. told the jury she did not know why she testified during cross-examination that Pico's hand did not go past the waistband of her pants, but she did agree with the prosecutor that she liked Pico's daughter, that she "kind of like[d]" Pico, and that it was hard to testify.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶4 The State presented the testimony of Detective Andrew Rich of the Oconomowoc Police Department. Rich interviewed Pico at Pico's home. An audio recording of the interview, with some redactions, was played for the jury. In the interview, Rich told Pico that one of the students had accused Pico of touching her inappropriately. Rich falsely told Pico that there was a video in the classroom, that the police found male DNA on the child's clothing, and that another student partially substantiated D.T's account.

¶5 In the interview, Pico knew the complainant was D.T. Pico told Rich that D.T. had been reading and asked Pico to tickle her leg, so Pico tickled her knee and thigh. Later in the interview, Pico told Rich that he tickled D.T. even though she did not ask him to, but that she told him it was fine. Pico admitted that his hand went up D.T.'s waistband "probably too high" and may have gone under D.T.'s waistband "a little bit" when his hand inadvertently snagged it. Pico denied recalling much of the encounter and at times said some of the details of D.T.'s claims were "possible." During the interview, Pico consistently denied purposely putting his hand down D.T.'s pants or touching her vagina. At the end, Rich suggested that once Pico walked out of the classroom, Pico was "probably just sick to [his] stomach," and Pico agreed.

¶6 Pico did not present any evidence, instead relying on a reasonable-doubt theory of defense. During closing arguments, his counsel emphasized D.T.'s unreliability and suggestibility. Pico's counsel also emphasized Pico's adamant denials that he touched D.T.'s vagina, despite Rich's high-pressure interview. Counsel argued that Pico's equivocal remarks during the interview merely reflected Pico's understanding that it was inappropriate to touch D.T.'s leg and Pico's regret for making D.T. uncomfortable.

¶7 The jury found Pico guilty of first-degree sexual assault. The circuit court sentenced Pico to six years of initial confinement to be followed by ten years of extended supervision.

¶8 Pico moved for postconviction relief, arguing that his trial counsel was ineffective. As material to this appeal, Pico claimed trial counsel failed to obtain medical records from or consult with an expert on a traumatic brain injury Pico suffered from a 1992 motorcycle accident. Pico alleged that expert testimony on his alleged brain injury would have shown that Pico was more susceptible to making false statements during Detective Rich's interview.

¶9 To support this claim, Pico's postconviction counsel hired neuropsychiatrist Dr. Horatio Capote to review Pico's medical records from the 1992 accident. At a *Machner*[2] hearing on Pico's motion, Dr. Capote testified that Pico had frontal lobe syndrome as a result of the 1992 accident. According to Dr. Capote, the lasting effects of Pico's brain injury could have affected Pico's responses during the police interview and caused Pico to find the interview and its context so taxing that Pico would have "agreed to just about anything to just end the situation."

¶10 Pico's trial counsel also testified at the *Machner* hearing. Counsel told the court that he knew before the trial that Pico had suffered a head injury as a result of a motorcycle accident. Pico told counsel he had been in an accident many, many years ago but that he had recovered and was fine. According to counsel, when he met with Pico in his office, Pico "wasn't expressing … any signs

---

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

4

that [counsel] would typically see of somebody who had deficits or problems." Counsel testified that even if he had an expert opinion saying that Pico did not realize that rubbing D.T.'s leg was inappropriate, counsel would not have called an expert to testify on an NGI defense (not guilty by reason of mental disease or defect) because counsel did not see any symptoms that fit the criteria.

¶11     The circuit court vacated Pico's judgment of conviction and ordered a new trial.  It concluded that Pico's trial counsel should have investigated Pico's frontal lobe injury because the injury would have had an effect on the strategy of the case.

¶12     The court of appeals reversed.  *State v. Pico*, No. 2015AP1799-CR, unpublished slip op. (WI App May 10, 2017).  As material, it determined that Pico's trial counsel reasonably investigated the 1992 accident and reasonably concluded that Pico's head injury did not make him more susceptible to making false statements during the police interview.[3]  *Id.*, ¶¶34-42, ¶¶50-54.  The supreme court affirmed.  *See State v. Pico*, 2018 WI 66, 382 Wis. 2d 273, 914 N.W.2d 95.

¶13     In 2019, Pico filed a WIS. STAT. § 974.06 motion for a new trial on the basis of newly discovered evidence.  He claimed the newly discovered effects of his 1992 brain injury made him "particularly susceptible to shaping his statement to the negative feedback of Detective Rich" during the police interview.  Pico also claimed postconviction counsel was ineffective because counsel did not

---

[3] Pico refers to his injury as a "brain injury" or "frontal lobe injury."  In its decision, the court of appeals refers to Pico's injury as a "head injury," explaining "[w]hile postconviction counsel described Pico's head injury as one of 'frontal lobe damage,' trial counsel said, 'a better way to describe it' is 'a head injury.'"  *State v. Pico*, No. 2015AP1799-CR, unpublished slip op. ¶35 n.4 (WI App May 10, 2017).  For consistency, we will refer to Pico's injury as a "head injury" in our analysis.

investigate or present the newly discovered effects of Pico's 1992 brain injury in Pico's original postconviction motion or on appeal.

¶14 To support the newly-discovered-evidence claim, Pico submitted a report from Dr. Nathan Glassman, a neuropsychologist. After examining Pico, reviewing the police interview, and administering psychological tests, Dr. Glassman found that Pico was "likely … more suggestible, and may have not been accurate in his report of the events that led to his arrest." Dr. Glassman opined that "[t]o the extent that Mr. Pico's self report of his behavior … amounted to a confession, it is highly likely that it was not an accurate account of what occurred."

¶15 The circuit court denied Pico's WIS. STAT. § 974.06 motion without a hearing. In a written order, it concluded that Pico's brain injury was not newly discovered evidence, but a new appreciation of previously known evidence. Based upon this conclusion, the court determined that Pico's postconviction counsel was not ineffective for failing to raise the newly-discovered-evidence claim in Pico's original postconviction motion or on direct appeal.

DISCUSSION

I. *Denial of Evidentiary Hearing*

¶16 At issue on appeal is whether the circuit court erred when it denied Pico's WIS. STAT. § 974.06 motion without an evidentiary hearing. A defendant is not automatically entitled to an evidentiary hearing relating to his or her postconviction motion. **State v. Allen**, 2004 WI 106, ¶10, 274 Wis. 2d 568, 682 N.W.2d 433. Rather, the circuit court is required to hold an evidentiary hearing only if the defendant has alleged "sufficient material facts that, if true, would

6

entitle the defendant to relief." ***State v. Ruffin***, 2022 WI 34, ¶35, ___ Wis. 2d ___, 974 N.W.2d 432. This is a question of law that we review de novo. ***Allen***, 274 Wis. 2d 568, ¶9. If, on the other hand, the postconviction motion does not raise facts sufficient to entitle the defendant to relief, presents only conclusory allegations, or if the record conclusively demonstrates the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing. ***Ruffin***, ___ Wis. 2d ___, ¶35. We review discretionary decisions for an erroneous exercise of discretion. ***Id.***, ¶28.

¶17 Additionally, a defendant may not raise a new claim in a WIS. STAT. § 974.06 motion absent a sufficient reason for failing to do so in an earlier proceeding. ***State v. Romero-Georgana***, 2014 WI 83, ¶34, 360 Wis. 2d 522, 849 N.W.2d 668 (citing ***State v. Escalona-Naranjo***, 185 Wis. 2d 168, 173, 517 N.W.2d 157 (1994)). Pico raises two issues that may provide a sufficient reason: (1) newly discovered evidence; and (2) ineffective assistance of postconviction counsel. *See **id.***, 360 Wis. 2d 522, ¶36 (ineffective assistance of postconviction counsel may constitute a sufficient reason for failing to raise an available claim in an earlier motion or on direct appeal); ***State v. Love***, 2005 WI 116, ¶¶21, 56, 284 Wis. 2d 111, 700 N.W.2d 62 (discovery of new evidence may constitute a sufficient reason for a second or subsequent postconviction proceeding under § 974.06).

¶18 We begin our analysis with Pico's newly-discovered-evidence claim. Generally, in a motion for a new trial based on newly discovered evidence, the defendant must prove, by clear and convincing evidence, that: (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative. ***State v. Armstrong***, 2005 WI 119, ¶161, 283 Wis. 2d

639, 700 N.W.2d 98. If the defendant is able to make this showing, then the circuit court must determine whether a reasonable probability exists that a different outcome would be reached in a trial. *Id.* Newly discovered evidence does not include a new appreciation of the importance of evidence previously known but not used. *State v. Fosnow*, 2001 WI App 2, ¶9, 240 Wis. 2d 699, 624 N.W.2d 883. Whether an item falls within the scope of newly appreciated evidence is a question of law we review de novo. *Id.*, ¶12.

¶19 Pico claims that his 1992 brain injury constitutes newly discovered evidence because the continuing effects, including his susceptibility to police interrogation, were not discovered until after his trial. Pico explains that, while he was aware of the brain injury at the time of the trial, he thought he was fully recovered and did not realize that he could have frontal lobe damage until a friend who had been an emergency room nurse later brought it up. As we have seen, to support this claim, Pico submitted a report from Dr. Glassman opining that Pico was "likely … more suggestible, and may have not been accurate in his report of the events that led to his arrest." We reject this argument because Dr. Glassman's report on the alleged effects from Pico's head injury is nothing more than a new appreciation of existing evidence.

¶20 Wisconsin courts have repeatedly held that a mental health diagnosis obtained after conviction constitutes evidence that is newly appreciated rather than newly discovered. For example, in *Vara v. State*, 56 Wis. 2d 390, 393-94, 202 N.W.2d 10 (1972), the defendant sought a new trial based on medical evidence that a pre-existing brain injury, coupled with the alcohol the defendant consumed on the night of the crime, supported an insanity defense. *Vara* rejected this claim, explaining:

> Vara and his attorney knew he had the head injury which formed the basis of the claim of insanity. This knowledge did not come after the trial but was known before the trial and therefore is no ground for the motion. The claim is made the importance of the brain injury was not realized until after trial. But newly-discovered evidence does not include newly-discovered importance of evidence previously known and not used.

*Id.* at 394 (citation omitted).

¶21    Similarly, *Fosnow* determined that a new psychiatric diagnosis relevant to whether the defendant was criminally responsible for his crimes was not newly discovered evidence. *See Fosnow*, 240 Wis. 2d 699, ¶16. *Fosnow* ruled that evidence of the defendant's diagnosis "existed and was known to him and his counsel at the time he entered his pleas," and that the postconviction expert opinion based on that evidence was "'the newly discovered importance of existing evidence,' rather than newly discovered evidence." *Id.* (citation omitted).

¶22    Like in *Vara* and *Fosnow*, Dr. Glassman's report provides a new opinion on existing evidence. Pico's head injury was known to Pico and his trial counsel before the trial. It is immaterial that Pico did not discover the significance of his head injury until after the trial. As stated in *Vara*, newly discovered evidence does not include a new appreciation of the importance of evidence previously known but not used. *See Vara*, 56 Wis. 2d at 394; *see also State v. Bembenek*, 140 Wis. 2d 248, 256-57, 409 N.W.2d 432 (Ct. App. 1987) (evidence is newly appreciated rather than newly discovered regardless of what caused the known evidence to become newly significant).

¶23    Pico relies on *State v. Edmunds*, 2008 WI App 33, 308 Wis. 2d 374, 746 N.W.2d 590, to argue that evidence can be newly discovered even though some part of the information was known at the time of the trial. *Edmunds*

9

determined that developments in medical research and literature on shaken baby syndrome in the ten years after the defendant's trial were newly discovered evidence. *Edmunds*, 308 Wis. 2d 374, ¶¶12-15. In doing so, *Edmunds* found significant the fact that the bulk of the medical research "only emerged in the ten years following [the defendant's] trial." *See id.*, ¶15.

¶24 Pico claims that, similar to *Edmunds*, the science on frontal lobe injuries has advanced over time. He cites several articles discussing developments in managing traumatic brain injuries and notes that "[a]dvances in the technology used to determine the extent of injury also have occurred." Pico does not allege facts sufficient to support this claim. Pico does not explain in his WIS. STAT. § 974.06 motion or on appeal what the articles say, how the science has advanced, or how the alleged advancements apply to this case. *See Allen*, 274 Wis. 2d 568, ¶23 (postconviction motion must allege "sufficient material facts for reviewing courts to meaningfully assess a defendant's claim," which generally should include who, what, where, when, why, and how). For all of these reasons, the circuit court did not err when it denied Pico's newly-discovered-evidence claim without a hearing.

¶25 We now turn to Pico's ineffective-assistance claim. To state a claim for ineffective assistance of postconviction counsel, a defendant must prove: (1) deficient performance; and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show postconviction counsel was deficient for failing to bring certain claims, the defendant must demonstrate that the new claims are clearly stronger than those previously brought. *Romero-Georgana*, 360 Wis. 2d 522, ¶46. To show prejudice, the defendant must show that the lawyer's errors were so serious that the defendant was deprived of a fair trial and a reliable outcome. *Strickland*, 466 U.S. at 687. In order to succeed, "[t]he defendant must

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Whether counsel's performance was deficient and whether that deficient performance prejudiced the defense are questions of law we review de novo. *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

¶26 Pico claims his postconviction lawyer should have raised the newly-discovered-evidence claim in his original postconviction motion and on direct appeal as an alternative to the ineffective-assistance claim. He asserts that "the newly discovered evidence claim is a winner, which necessarily makes it clearly stronger than the unsuccessful trial ineffectiveness claim raised." This claim lacks merit. As we have seen above, the record conclusively demonstrates that Pico's newly-discovered-evidence claim would not have been successful. Consequently, Pico's newly-discovered-evidence claim is not "clearly stronger" than the ineffective-assistance claim Pico's postconviction counsel raised. *See Romero-Georgana*, 360 Wis. 2d 522, ¶46. We thus conclude that Pico's postconviction counsel was not deficient for failing to raise it, and the circuit court properly denied this claim without a hearing.

¶27 In sum, Pico has not alleged facts sufficient to entitle him to relief on his newly-discovered-evidence and ineffective-assistance claims, and the record conclusively demonstrates he is not entitled to relief. Thus, the circuit court properly exercised its discretion when it denied Pico's WIS. STAT. § 974.06 motion without an evidentiary hearing.

## II.   *New Trial in the Interest of Justice*

¶28   Pico contends he is entitled to a new trial in the interest of justice under WIS. STAT. § 752.35 because the real controversy was not fully tried due to the fact that the jury did not hear evidence of the continuing effects of Pico's brain injury.  Setting aside whether such a request is proper at this juncture, *see State v. Davis*, 2011 WI App 147, ¶35 n.7, 337 Wis. 2d 688, 808 N.W.2d 130, we conclude that the real controversy—whether Pico twice touched D.T.'s vagina—was fully tried.

¶29   We exercise our discretionary power to grant a new trial "infrequently and judiciously."  *State v. Avery*, 2013 WI 13, ¶38, 345 Wis. 2d 407, 826 N.W.2d 60 (citation omitted).  Pico has not convinced us that this is the type of exceptional case warranting an exercise of our discretionary powers.  Pico used a reasonable-doubt theory of defense at the trial.  Pico had ample opportunities to challenge D.T.'s credibility and highlighted various issues with and inconsistencies in her testimony to the jury.  The jury was able to weigh D.T.'s claim that Pico twice touched her vagina against Pico's adamant denials to Detective Rich.  The jury heard the relevant evidence.  Accordingly, we decline Pico's request for a new trial.

*By the Court*.—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.