# COURT OF APPEALS
# DECISION
# DATED AND FILED

## May 31, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1791**

STATE OF WISCONSIN

Cir. Ct. No. **2005CF770**

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

ANTHONY Q. WALLACE,

   DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Winnebago County: BARBARA H. KEY, Judge. *Affirmed*.

Before Neubauer, Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Anthony Q. Wallace appeals from an order denying his postconviction motion for a new trial based on newly discovered evidence: the recantation of trial testimony from one of his victims. The trial court did not erroneously exercise its discretion by determining that this recantation was neither credible nor adequately corroborated and thus that there was no reasonable probability that a new trial would lead to a different result. We therefore affirm the order and, because we conclude that the controversy was fully tried, we decline to grant a new trial in the interest of justice.

## BACKGROUND

¶2    The State charged Wallace with multiple crimes stemming from his brutal beating, false imprisonment, and sexual assault of two victims, Susan[1] (a woman) and Carrie (a seventeen-year-old girl), in his apartment in 2005. The jury heard consistent testimony from both Susan and Carrie about how Wallace beat, tortured, and sodomized them because he suspected that one of them had stolen crack cocaine from him. Among other graphic details, both Susan and Carrie testified that Wallace punched Susan in the face so hard that she urinated on herself; that Wallace whipped Carrie with a cord and then poured salt and alcohol into her wounds; that Wallace tried to make both Susan and Carrie eat cat food; that Wallace ordered Carrie to perform oral sex on him as he sat on a couch; and that Wallace raped Carrie anally with a forty-ounce beer bottle and a crystal vase. Susan testified that after Carrie was assaulted with the items, Carrie had "blood and shit everywhere," that it was running down her legs and on the bed.

---

[1] We refer to the victims in this case by pseudonyms consistent with the policy set forth in WIS. STAT. RULE § 809.86(1).

2

¶3     In addition to the victims' testimony, the State produced testimony from a nurse who had examined Carrie after the incident.  This nurse stated that Carrie had told her she had been held against her will for seven days and that "there was a 40-ounce bottle stuck up her rectum," which would have been consistent with the injuries the nurse observed.  The nurse did not recall seeing blood or feces when she examined Carrie and admitted that Carrie's injuries could also have resulted from having had anal sex.

¶4     The State also introduced physical evidence.  A DNA analyst from the Wisconsin State Crime Laboratory testified that a reddish-brown stain on a crystal vase from Wallace's apartment contained Carrie's DNA, as did a sample taken from a beer bottle.  The stained bedding seized from Wallace's apartment was not tested before trial, but the State displayed it to the jury and said that the stains "appeared consistent with blood" and thus corroborated Susan's and Carrie's testimony.

¶5     Wallace's defense admitted the beatings but denied the sexual assaults and false imprisonment.  Nevertheless, the jury found Wallace guilty on seven felony counts (three counts of second-degree sexual assault, two counts of false imprisonment, and one count each of child abuse-intentionally causing harm and intimidating a victim).

¶6     Wallace has appealed to this court several times.  On his direct appeal in 2009, we rejected his argument that the evidence was insufficient to support some of his convictions.[2]  ***State v. Wallace***, No. 2008AP949-CR,

---

[2] Due to a jury instruction error on Wallace's victim-intimidation count, we remanded for the trial court to correct the judgment and resentence Wallace on that conviction.

3

unpublished slip op. ¶1 (WI App. Mar. 24, 2009). Next, Wallace filed a motion for DNA testing of multiple objects under WIS. STAT. § 974.07(6) (2021-22),[3] which was denied by the trial court on January 19, 2011. In 2011, while affirming denial of the motion as to all other objects, we reversed with respect to the stained bedding seized from Wallace's apartment and remanded for forensic testing of that bedding. *State v. Wallace*, No. 2011AP225-CR, unpublished op. and order at 1-2 (WI App. Dec. 7, 2011).

¶7    The testing showed that the stains on the bedding were not blood, which prompted Wallace to seek a new trial on the grounds that this result undercut Carrie's and Susan's testimony that they were held captive and forced to have nonconsensual sex. In 2017, this court affirmed the rejection of that argument, concluding, in part, that the trial court properly exercised its discretion in denying Wallace's motion because there was no "reasonable probability" pursuant to WIS. STAT. § 974.06 that the new evidence showing that the stains were not blood would cause a reasonable jury to have reasonable doubt as to Wallace's guilt. *State v. Wallace*, No. 2015AP2295, unpublished slip op. ¶¶6, 14 (WI App. Jan. 25, 2017). Our opinion was based in large part on the substantial other evidence presented at trial corroborating Carrie's and Susan's testimony, including photographs of their injuries, a statement from Wallace's stepfather in which he said Wallace had called him over and showed him the injuries he inflicted on Carrie because she stole from him, a police officer's testimony that

---

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

4

Susan told him she and another female were anally sexually assaulted, and the DNA evidence on objects used in the assault.[4] *Id.*, ¶¶15-17.

¶8      Wallace filed the WIS. STAT. § 974.06 motion giving rise to the instant appeal in 2019, asserting that, in the interest of justice, he was entitled to a new trial as to five counts in light of newly discovered evidence. He submitted an affidavit that Susan signed on December 11, 2017—more than twelve years after the incident took place and more than ten years after trial—in which she recanted her allegation that Wallace had sexually assaulted her. According to this affidavit, Susan contacted Wallace's attorney "on [her] own initiative" because she felt "bad about lying to convict Wallace in this case." The affidavit further said that Susan's earlier allegations, including that Wallace forced her to have nonconsensual sex and held her against her will and that she had seen Wallace "doing sex[ual] acts to [Carrie]," were all lies that Susan made up because she was angry about Wallace having accused her of stealing and then too scared to change the story she had given the police.

¶9      Susan initially failed to appear by subpoena at an evidentiary hearing the trial court[5] scheduled on Wallace's motion. She was arrested on a bench warrant, and at a bail/bond hearing in December, 2019, she told the court, under oath, that she had not appeared because the affidavit was made under duress and she was fearful of her safety. She explained that she was afraid of Wallace and

---

[4] We also rejected Wallace's other claims for ineffective assistance of counsel and for a new trial in the interest of justice pursuant to WIS. STAT. § 752.35. *State v. Wallace*, No. 2015AP2295, unpublished slip op. ¶¶28, 30 (WI App. Jan. 25, 2017).

[5] The Honorable Thomas J. Gritton presided over Wallace's trial, sentencing, and first WIS. STAT. § 974.06 proceedings. The Honorable Barbara H. Key presided over proceedings related to this second § 974.06 motion. We refer to them interchangeably as the "trial court."

that Wallace's family had been "trying to pay [her] money to lie for him and [she] did," traveling to see his lawyer and saying that "he didn't do it." Susan indicated that she was not willing to say "under oath" that "he didn't rape [her] when he did … but they [kept] on harassing [her]."

¶10 Susan testified at an evidentiary hearing a few days later, asserting that she had told the truth about Wallace's assaults at trial. She said that she had signed the affidavit—which she never read—because Wallace's family had paid, pressured, threatened, and harassed her to do so. Susan testified that she had been paid between $2,000 and $3,000 to recant and that Wallace's family promised to leave her alone if Wallace got a new trial. Finally, Susan testified that Michelle Thiel, a woman with whom she had shared a cell block when they were both in jail in 2008 and who happened to be corresponding with Wallace[6] at the time, had told Susan that Wallace wanted Susan to recant. Thiel also testified. She said that when they were in jail together, Susan told her that Susan had "lied and sent [Wallace] to prison."

¶11 The trial court continued the evidentiary hearing to June, 2021, when two more witnesses testified. One, Thomas Plach, testified that he had been in a romantic relationship with Susan since 2006. He stated that he had driven Susan to a lawyer's office in the Milwaukee area where "she was going to get some money for going to see an attorney and signing some paperwork" and "[i]t was associated with Wallace." Susan showed him cash she had received at the lawyer's office. When Susan explained to Plach that she had signed an affidavit changing her testimony against Wallace, Plach warned her that she "just perjured

---

[6] Thiel even had a photograph of Wallace up in her cell.

[her]self." Plach acknowledged that Susan was a drug addict who had lied to him and others in the past.

¶12     The other witness, Thomas Fischer, was a private investigator who had been hired by Wallace's counsel to interview Susan in 2019. He testified that Susan had told him "everything on the affidavit was untrue" and that the only reason she did it was because she was being threatened by the Wallace family. Susan had not mentioned to Fischer, however, that she had been paid for recanting her testimony.

¶13     The trial court denied Wallace's motion. In explaining its decision, the court noted that Susan testified three times under oath that she was sexually assaulted—at Wallace's trial, at the trial of Wallace's co-defendant (also in 2007), and at the evidentiary hearing, where the court characterized her testimony as "very forceful" that her recantation in the affidavit was untrue. The court was not persuaded that there was any evidence corroborating the affidavit, stating that the lack of blood on the bedding "just isn't, it's more of a red herring" and that it "did not find [Thiel's testimony] believable … at all." It just "didn't make any sense to the Court." The court further found that both Plach's and Fischer's testimony corroborated Susan's testimony that "pressure and/or incentives from [Wallace's] family" were what led to the affidavit. Thus, the court said, Susan's "recantation of the recantation made more sense and thus reinforces why a court has to look at these types of claims with great skepticism." Finally, the court cited the "overwhelming" evidence of Wallace's guilt—including "DNA on the vase and on the beer bottle," "what the two victims said," and "the physical condition of the victim"—and determined "there is not a reasonable probability that a jury would have reasonable doubt" as to Wallace's guilt. The court also added, "If anything, the interests of justice would say this does not call for a new trial ...."

**STANDARD OF REVIEW**

¶14    We review Wallace's appeal of the trial court's decision on his motion for new trial based on newly discovered evidence for an erroneous exercise of discretion. *State v. McCallum*, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997). "A court properly exercises its discretion if it relies on the relevant facts in the record and applies the proper legal standard to reach a reasonable decision." *State v. Edmunds*, 2008 WI App 33, ¶8, 308 Wis. 2d 374, 746 N.W.2d 590. We reverse only if "the [trial] court's factual findings are unsupported by the evidence or if the court applied an erroneous view of the law." *Id.* (citing *State v. Martinez*, 150 Wis. 2d 62, 71, 440 N.W.2d 783 (1989)).

¶15    Wallace also asks us to grant a new trial in the interest of justice because the jury never heard Susan's recantation and thus, the real controversy— whether he sexually assaulted Carrie and/or Susan—was never fully tried. *See* WIS. STAT. § 752.35. The decision to grant a new trial in the interest of justice is within our discretion. *Id.*

**DISCUSSION**

¶16    A defendant seeking a new trial based on newly discovered evidence bears the burden of proving by clear and convincing evidence that: "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *State v. Avery*, 2013 WI 13, ¶25, 345 Wis. 2d 407, 826 N.W.2d 60; *State v. Armstrong*, 2005 WI 119, ¶158, 283 Wis. 2d 639, 700 N.W.2d 98. "If the defendant is able to make this showing, then 'the [trial] court must determine whether a reasonable probability exists that a

different result would be reached in a trial.'" *Avery*, 345 Wis. 2d 407, ¶25 (citation omitted).

¶17    The State does not contest that Wallace has met his burden to prove that Susan's affidavit meets the first four prongs of the new evidence test. We agree with the State that these requirements are not dispositive because the State is correct that, when the newly discovered evidence at issue is a recantation, there is an additional requirement that the recantation must be corroborated by other newly discovered evidence. *See State v. McAlister*, 2018 WI 34, ¶33, 380 Wis. 2d 684, 911 N.W.2d 77; *McCallum*, 208 Wis. 2d at 473-74; *State v. Terrance J.W.*, 202 Wis. 2d 496, 500, 550 N.W.2d 445 (Ct. App. 1996). "Recantations are inherently unreliable." *McCallum*, 208 Wis. 2d at 476 (citing *Dunlavy v. Dairyland Mut. Ins. Co.*, 21 Wis. 2d 105, 114, 124 N.W.2d 73 (1963)). Corroboration requires proof of both a feasible motive for the initial false statement and circumstantial guarantees that the recantation is trustworthy. *McAlister*, 380 Wis. 2d 684, ¶33; *McCallum*, 208 Wis. 2d at 477-78.

¶18    Wallace asserts that both requirements are present in this case: that Susan's anger over Wallace's accusation that she stole his crack is what prompted her to make up the stories about nonconsensual sex, and that circumstantial guarantees of the trustworthiness of the affidavit include the guarantees in the affidavit itself, forensic testing showing that the stains on bedding seized from Wallace's apartment were not blood, Thiel's testimony that Susan had admitted in 2008 to lying about Wallace's crimes, and the testimony from the nurse who examined Carrie in 2005 shortly after the incident. Setting aside the question of whether Susan's anger over being accused of theft is a "feasible" motive for lying about Wallace's sexual assaults and consistently testifying about those fabricated facts multiple times under oath and over the course of fifteen years, we agree with

the trial court that there are insufficient indicia of trustworthiness to corroborate Susan's affidavit.

¶19 Among the considerations relevant to the trustworthiness requirement are those that can be gleaned from the recantation itself: whether it is internally consistent, consistent with circumstances existing at the time of original allegations, and indicative of knowledge of legal consequences resulting from a false accusation, for example. *McCallum*, 208 Wis. 2d at 478; *Terrance J.W.*, 202 Wis. 2d at 502-03. These considerations suggest that Susan's affidavit is not trustworthy. Although the affidavit may be consistent with some of the circumstances existing when the 2005 incident occurred, it is not internally consistent in that Susan's purported motive for lying—anger over being accused of stealing drugs—is not rationally related to the allegedly false accusations, does not explain accusations against Wallace's co-defendant, and does not adequately explain the decision to recant ten years after trial. *See Terrance J.W.*, 202 Wis. 2d at 502-03 (concluding that a recantation was internally inconsistent because the stated motive was not rationally related to the alleged false allegations and did not adequately explain why the victim recanted years later). Nor does the affidavit explain the consistency between Carrie's and Susan's trial testimony. And unlike in the *McCallum* case, where a recantation was deemed sufficiently corroborated when the recanting witness testified that she was not pressured by anyone to recant and understood the legal consequences of having perjured herself earlier, 208 Wis. 2d at 470, Susan (and others) testified that Susan was pressured and paid to recant. There is no indication in the affidavit—the only instance in which Susan purports to have lied at Wallace's trial—suggesting she was aware of the legal consequences she might face for doing so.

¶20    We next move on to Wallace's other attempts to show corroboration. As the State and trial court noted, the forensic testing showing an absence of blood on the bedding could have many explanations other than that Wallace did not commit sexual assault. At trial, Susan testified that after Wallace anally assaulted Carrie with a vase and a beer bottle, there was "blood and shit everywhere." The record reflects that the state crime lab does not test for fecal matter.

¶21    Thiel's testimony fares no better as corroborating evidence. The trial court explicitly stated on the record that it "did not find [her testimony] believable." "When the trial court makes findings of fact as to the credibility of witnesses, we will not upset those findings unless they are clearly erroneous." **Terrance J.W.**, 202 Wis. 2d at 501. Incredible testimony is simply insufficient to corroborate an "inherently unreliable" recantation. *See* **McCallum**, 208 Wis. 2d at 476.

¶22    Finally, Wallace argues that the trial testimony of the nurse who examined Carrie in 2005 corroborates the recantation because the nurse testified that she did not observe blood or feces on Carrie and that her injuries could have been caused by consensual sexual contact. Again, Wallace is stretching too far. There are other explanations aside from Wallace's innocence for the nurse not remembering having seen blood or fecal matter on Carrie—for example, both Carrie and Susan testified at trial that Wallace (or his acquaintances) made them shower after he assaulted them.[7] We conclude that none of the things Wallace

---

[7] Wallace is incorrect in asserting that the nurse who examined Carrie found "no medical evidence to support [Susan]'s testimony about the sexual assault she supposedly observed." The nurse testified that Carrie had injuries that she "would think … would be more from anal penetration," and that "a 40-ounce bottle stuck up [Carrie's] rectum … would coincide with her injuries," but she could not determine for certain whether those injuries were from objects or "anal sex with a penis."

points to as circumstantial guarantees of the recantation's trustworthiness are sufficient and that the trial court did not err in making that determination.

¶23     Turning to the requirement that a defendant must show "a reasonable probability that a jury, looking at both the accusation and the recantation, would have a reasonable doubt as to the defendant's guilt," **McCallum**, 208 Wis. 2d at 475, the trial court also found "there is not a reasonable probability that a jury would have reasonable doubt."  Again, we see no erroneous exercise of discretion with the court's determination.  Wallace argues that the court's statement that "the recantation of the recantation made more sense"—that is, more sense than the recantation—shows that it was impermissibly weighing the evidence.  Indeed, a trial court would be applying the incorrect legal standard if it denied a new trial based on a finding that a recantation is "less credible" than an original accusation. *Id.* at 472.  But, Wallace is taking the court's statement out of context.  "[T]he court is not to base its decision solely on the credibility of the newly discovered evidence, *unless it finds the new evidence to be incredible*." **Avery**, 345 Wis. 2d 407, ¶25 (emphasis added); *see also* **McCallum**, 208 Wis. 2d at 474-75.

¶24     Here, that is exactly what the trial court found: that the uncorroborated affidavit signed by Susan was not credible.  The court noted that Susan was "very forceful" that "what was in the affidavit given to [Wallace's counsel] was not true."  Given the ample evidence that the affidavit was the product not of honest remorse for lying but of some combination of harassment and payment from Wallace's family, we cannot say this finding by the trial court was clearly erroneous.  It is well established that "the [trial] court judge is in a much better position to resolve the question of whether the recantation would raise a reasonable doubt in the minds of a jury that is looking at both the recantation and the original statement." **McCallum**, 208 Wis. 2d at 479.

¶25    In sum, we conclude that there is not a reasonable probability that a jury, looking at all the evidence presented at trial and the new evidence surrounding Susan's affidavit—including the recantation of that affidavit—would have a reasonable doubt as to Wallace's guilt on any sexual assault charges. This conclusion, like that with respect to insufficient corroboration of Susan's affidavit, means we must affirm the trial court's denial of Wallace's motion for a new trial based on newly discovered evidence.

¶26    We also conclude that Wallace is not entitled to a new trial in the interest of justice because the controversy was fully tried even though the jury did not hear the contents of Susan's recantation. *See Vollmer v. Luety*, 156 Wis. 2d 1, 19, 456 N.W.2d 797 (1990) (explaining that this court has the power to reverse "when the real controversy has not been fully tried"). Wisconsin courts have found that the real controversy was not fully tried when the jury had improper evidence before it that clouded a crucial issue, *State v. Penigar*, 139 Wis. 2d 569, 408 N.W.2d 28 (1987), and when the jury was not able to hear important testimony bearing on an important issue, *Garcia v. State*, 73 Wis. 2d 651, 245 N.W.2d 654 (1976).

¶27    Wallace has not convinced us that his case falls under either category or that the real controversy—whether Susan and Carrie consented to sexual contact from him—was not fully tried. In light of the extensive evidence discussed above and in *Wallace*, No. 2015AP2295, ¶14, we do not agree that the State's presentation of the stained bedding and characterization of the stains as being "consistent with blood," when they were later determined not to be blood, was significant enough to cloud the jury's view about the credibility of the victims. We are not convinced that Susan's later uncorroborated recantation is important testimony bearing on an important issue; the record shows that Susan's

13

credibility was thoroughly and extensively tested at trial through vigorous examination. Our "discretionary reversal power is exercised only in 'exceptional cases,'" *Avery*, 345 Wis. 2d 407, ¶38 (citation omitted), and this is not such a case.

## CONCLUSION

¶28 We conclude that the trial court's findings that Susan's recantation was insufficiently corroborated and not credible were not clearly erroneous. Therefore, the court's determination—that there was no reasonable probability that a jury hearing that recantation would reach a different result than the one that convicted Wallace of the sexual assault and false imprisonment of both Carrie and Susan—does not constitute an erroneous exercise of discretion. We also decline Wallace's request to order a new trial in the interest of justice, because we are satisfied that the actual controversy was fully tried. Therefore, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.